LEWIS v. SHAW et al.

(Circuit Court, D. Washington, W. D. October 30, 1895.)

1. PUBLIC LANDS—BONA FIDE PURCHASER.

The rights of a bona fide purchaser from one who has entered timber lands under the act of congress of June 3, 1878, which provides that, for a false statement by the entryman, any grant which he may have made shall be void, except in the hands of a bona fide purchaser, are not affected by a subsequent cancellation of the entry for false representations, although at the time of his purchase no patent for the land had been issued.

2. SAME.

Plaintiff purchased and paid a full price in cash for land entered under the act of June 3, 1878, by one M., but for which no patent had been issued. At the time of the purchase, plaintiff's vendor was in undisputed possession, holding under warranty deeds from M. The records of the

land office showed a regular entry by M. and payment to the United States. A certificate of entry had been issued to M., and plaintiff had no notice of any defects in his title. *Held,* that plaintiff was a bona fide purchaser.

3. SAME—IMMATERIAL MISSTATEMENT IN APPLICATION.

The fact that one who is actually qualified to make an entry of timber land under the act of June 3, 1878, by having declared his intention .to become a citizen of the United States, erroneously states, in his application to purchase such land, that he is a citizen, no statement on the subject being required, is immaterial, and does not invalidate his entry.

4. SAME—ENTRY FOR BENEFIT OF STRANGER—GOOD FAITH.

It was alleged that M., in entering timber land under the act of June 3, 1878, acted, not for himself, but as the instrument of one R. It appeared that M. was an employé of R., and first heard of the land from him; that, before entering it, he consulted R., and secured from him a promise of the money to make the entry, R. agreeing to take as security a conveyance of a one-half interest in the land; that R. advanced the money, and after the entry M. executed a contract to convey a one-half interest in the land to R., as security for the advance and for other money due, in all $475; that R. then began to cut timber on the land, and afterwards bought M.'s remaining half for $1,000. M. and R. both testified that there was no contract, before the entry, that M. should give R. a half of the land when his title was perfected, but that R., having called on M. to repay his advance, and M. being unable to do so, R. bought the whole, and sold it at the first opportunity. *Held,* that the charge that M. had entered the land as the instrument of R. was not made out.

5. SAME—CANCELLATION OF ENTRY—RIGHTS OF BONA FIDE PURCHASER.

Lewis v. Shaw, 57 Fed. 516, reaffirmed.

Bill by Charles Lewis, alleging equitable ownership of 128 acres of land, situated in Pierce county, state of Washington, for a decree establishing his title to said land, and to have the defendant John C. Shaw, to whom a patent has been issued by the United States, declared a trustee of said title. The land in question was entered by one Charles C. Miller on March 16, 1883, as timber land, under the act of congress of June 3, 1878. On final hearing. Decree for complainant.

John Paul Judson, for complainant.

D. J. Crowley and Fremont Campbell, for defendants.

HANFORD, District Judge. For a statement of this case, I refer to the opinion of the court on demurrer to the bill of complaint now on file (57 Fed. 516–519), and I now reaffirm that decision as to the points then considered.

Since the decision of the court upon said demurrer, the defendants have answered, denying the equity of the bill, the testimony has been taken and reported to the court by a master, and the case has been argued and submitted on final hearing. The evidence shows clearly that the complainant is entitled to all the rights of a bona fide purchaser of the land. In the case of U. S. v. California & O. Land Co., 148 U. S. 42, 13 Sup. Ct. 458, Mr. Justice Brewer, in the opinion of the court, quotes with approval from section 745, 2 Pom. Eq. Jur., wherein the author states that "the essential elements which constitute a bona fide purchaser are, therefore, three: A valuable consideration, the absence of notice, and presence of good faith." Judged by that rule, the complainant stands upon firm ground. He actually

paid $9,000 in money for the land in question. At the time his bargain was made, his vendor held undisputed possession, claiming to be the true owner. The records in the land office at that time showed a regular entry. Payment had been made to the United States for the land by Miller, and a certificate of entry had been issued to him, whereby he became the apparent owner. The complainant had no notice whatever of any defect in the title. His vendor held under a warranty deed from Miller, and the evidence fails to show any circumstances which would cause a prudent man to doubt the validity of the title. The defendants insist that one who buys from an entryman of public land, before the legal title has passed from the government, cannot, by reason of being a bona fide purchaser, acquire any better right than that of his vendor; and in a number of cases, it has been so decided by the courts. The law, however, under which Miller purchased the land in question contains an express provision that, if the entryman makes any false statements in his application to purchase, he shall be subject to the pains and penalties of perjury, and shall forfeit the money which he may have paid for the land, and all right and title to the same, and that any grant or conveyance which he may have made, except in the hands of bona fide purchasers, shall be void. This law declares a forfeiture, prescribes the conditions, and fixes the limitations. The language implies that, not only shall the entryman who has committed perjury in his application forfeit all his rights to the land, but his grantee or vendee, if not a bona fide purchaser, shall also forfeit all his rights to and interest in the land. Here the limit is found. The implication is equally strong that the forfeiture does not extend to include rights or interests acquired in the land by a bona fide purchaser. Congress, in framing this law, seems to have recognized the injustice of permitting, after an entry has been made, and after the land department has taken proof of compliance with the law, accepted payment, and delayed for years to discover any ground for invalidating the entry, and after the lands have become enhanced in value, and sold for full value to an honest investor, the initiation of a contest to defeat his title upon new evidence. Such proceedings offer a temptation and premium to dishonest land jumpers to rob honest people, by giving false information to agents of the land department, who are, in most cases, willing to be gulled by tales of fraud in land entries. The idea that a purchaser of unpatented land cannot, under any circumstances, be a bona fide purchaser, has been exploded by the decision of the supreme court in the case of U. S. v. California & O. Land Co., above referred to. In that case, congress made a grant of land to the state of Oregon, to aid in the construction of a wagon road. The granting act contained a proviso that the land should be exclusively applied in the construction of said road, and should be disposed of only as the work progressed, and further provided that, upon certificates of completion of 10-mile sections of road, by the governor of Oregon, filed with the secretary of the interior, limited quantities of the granted land might be sold. Even if the act can be regarded as a grant, and effective to pass the title without the issuance of patents, still it was a grant upon conditions

precedent. The jus disponendi did not become vested in the grantee until the governor certified to the secretary of the interior, as the act required. Therefore, the complete legal title could not, by the terms of the act, and did not, pass prior to the time of filing the governor's certificates. Before actual construction of the road had been commenced, the legislature of the state of Oregon, as far as it had power to do so, conveyed the whole grant to a private corporation, and said corporation pretended to construct the road, and obtained certificates from the governor that the same had been completed. About 10 years subsequent to the original grant, congress passed a law providing "that in all cases when the road in aid of construction, of which said lands were granted are shown by the certificate of the governor of the state of Oregon, as in said acts provided, to have been constructed and completed, patents for said land shall issue in due form to the state of Oregon, as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall by public act have transferred its interest in said lands to any corporation or corporations, in which case the patents shall issue from the general land office to such corporation or corporations upon their payment of the necessary expenses thereof: provided, that this shall not be construed to revive any land grant already expired, nor to create any new rights of any kind except to provide for issuing patents for lands to which the state is already entitled." 18 Stat. 80. The title to this land never became vested in the state of Oregon, for the reason that, without having performed the conditions precedent, or acquired the jus disponendi, the state, by a public act, made a transfer of all its right, title, and interest as grantee, and congress by the supplemental act provided that the title should be conveyed from the government direct to the grantee of the state, by patents to be issued after compliance with prescribed conditions. The legal title, therefore, remained in the government until patents should issue. The wagon-road company, after having obtained patents for only part of the land, sold all of it. The purchasers organized the Oregon & California Land Company, the defendant in the case referred to, and by deeds conveyed their title to said company. The suit was brought against said company in equity, to have the land grant declared forfeited for the reason that the wagon road has never been constructed, and the certificates from the governor to the secretary of the interior that the road had been constructed were obtained by fraud. The defendant admitted that the governor's certificates were obtained by fraud, and for its defense relied upon a plea that its promoters purchased the land in good faith, and paid the full value thereof, without notice of any fraud, or knowledge of any facts whereby the claim of ownership in their grantor might be impeached. Although by the plea it appears that, as to a considerable part of the land, to wit, over 300,000 acres, the defendant's promoters purchased only an apparently equitable title from a corporation which in fact had no equitable right whatever, the supreme court, in a suit by the government, which still retained the legal title, held the plea to be sufficient, and a complete defense, and upon evidence going no further than to sustain the allegations of the plea, rendered a decree

which, in fact, established the defendant's claim to a perfect title to all of the land. By comparison, the plea in the case referred to is not stronger, in justice and morals, than the case made by the complaint, and the proofs now before me.

The grounds of defense are as follows:

First. Miller's entry has been canceled by order of the secretary of the interior, and the decision of the secretary is based upon facts which he has found from consideration of the evidence taken by the register and receiver of the local land office, and the findings of the secretary are conclusive upon the courts. This proposition has been passed upon, and my opinion is expressed in the opinion heretofore rendered upon the demurrer. It is only necessary to add that the testimony fully establishes the plaintiff's allegation that the proceedings to cancel Miller's entry were taken without notice to him. Therefore, he is not bound by the decision of the land department.

Second. At the time of making his entry, Miller was not a citizen of the United States. The evidence, however, shows that, several years prior to filing his application to purchase the land, he had made his declaration of intention to become a citizen of the United States. The law under which he purchased the land provides that timber land may be sold to citizens of the United States, or persons who have declared their intention to become such, and the law does not require a purchaser of land under said act to state in his application that he is a citizen of the United States. Mr. Miller was qualified to become a purchaser of timber land under said law, and the inaccuracy of his statement in his application to purchase the' land, to the effect that he was then a naturalized citizen of the United States, is immaterial. No fraud was committed upon the government thereby, and I hold that his entry is not invalid on that account.

Third. An issue was raised as to the character of the land. The defendants deny that, at the time of Miller's entry, it was unfit for cultivation, or chiefly valuable for its timber, so as to be subject to sale under said law. The register and receiver of the land office, upon the evidence before them, found in Mr. Miller's favor on this point, and their superiors in the land department were not able, on this ground, to reverse their decision. While the evidence is conflicting, it all tends to prove that the land is not very good for agriculture, and that the timber thereon is not the best quality of merchantable timber, and not as abundant as the timber in other parts of Western Washington. It is shown that, after the entry had been made, and before the land had been sold to the plaintiff, a considerable sum had been realized by Miller's vendee, Ryan, on timber taken from this land and sold for lumber, and there remains upon the land a considerable quantity of timber which is being cut for cord wood. The defendant Shaw, who took the land under the pre-emption law, and was thereafter required to make proof of his residence on and cultivation of the land, did cultivate a very small piece for one season only. Its value for agricultural purposes is not sufficient to induce him to continue to work it himself, nor tempt others to rent it. After carefully weighing all the evidence. I have reached the conclusion that the decision of the register and receiver, as to the nature and

quality of the land, was right, and in accordance with a fair preponderance of the evidence.

Fourth. It is claimed that Miller did not purchase the land in good faith, for his own use, but acted merely as the instrument of Ryan, and that it was agreed between them that the title which Miller should acquire, should inure to the benefit of Ryan. It was on this ground that the secretary of the interior canceled the entry. The facts relied upon to sustain the secretary's conclusion are that Miller was an employé of Ryan, and obtained his first information with reference to the land, from Ryan; that, before deciding to enter it as timber land, he consulted with Ryan, and obtained from him a promise to advance the amount of money necessary to make the entry, and that Ryan agreed to take, as security for the amount of the purchase price which he should advance, a conveyance of a one-half interest in the land; that Ryan did advance money to Miller at the time his final proof was made; that, a few days afterwards, Miller executed a contract to convey a one-half interest in the land, as security for the money advanced, and an additional sum which Miller owed on account of other dealings, in all amounting to about $475. Ryan then commenced cutting timber on the land, and actually removed most of the merchantable timber, and he subsequently purchased Miller's remaining one-half interest for the price of $1,000. These facts only gave rise to an inference that Miller had contracted, before entering the land, to give Ryan an undivided one-half thereof, after his title should be perfected, which inference, in my opinion, is overcome by the positive and direct testimony of both Ryan and Miller, that no such contract was made. They have both testified that, Ryan being in need of money, called upon Miller to repay him the amount secured by the contract for a one-half interest in the land, and that, Miller being unable to make the payment, Ryan took steps to put the land on the market, and finding that it had enhanced in value, he purchased Miller's entire interest, and resold it at the first opportunity. The facts are not necessarily inconsistent with an honest entry by Miller, and certainly not sufficient to compel an inference of fraud sufficiently strong to overcome the only positive testimony bearing upon this vital point. To justify a forfeiture, proof of the facts constituting fraud or perjury must be clear and convincing. Mere inferences are not sufficient. U. S. v. Budd, 43 Fed. 630; Id., 144 U. S. 154, 12 Sup. Ct. 575.

Decree for the complainant in accordance with the prayer of his bill.